DARYISE L. EARL,

                Plaintiff,

v.                               Case No. 23-cv-1017-pp

JENNIFER MCDERMOTT
and JOHN/JANE DOES 1–80,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 5) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

    Daryise L. Earl, an individual incarcerated at Kettle Moraine Correctional Institution (KMCI) who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to institute appropriate safeguards to stop the spread of COVID-19 in September 2020. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 5, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

    The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On August 23, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $8.29. Dkt. No. 7. The court received that fee on October 18, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint names as defendants Kettle Moraine Warden Jennifer McDermott, medical staff employee John Gliniecki and numerous unknown, John or Jane Doe defendants. Dkt. No. 1 at ¶¶3–8. The plaintiff says Does 1 through 20 are "the individuals responsible for creating the COVID-19 policies and procedures that were in placed [*sic*] at KMCI between September 3, 2020 thru [*sic*] September 29, 2020." Id. at ¶5. Does 21 through 40 are "the individuals responsible for overseeing the amendment/enforcement of the

COVID-19 policies and procedures" at KMCI during the same weeks. Id. at ¶6. Does 41 through 60 are "the medical professionals responsible for overseeing the quarantine/isolation process of the inmates who either tested positive for COVID-19, or the inmates that were in close contact with someone who had tested positive for COVID-19" at KMCI during the same dates. Id. at ¶7. Finally, Does 61 through 80 are "the individuals responsible for overseeing the inmate quarantine/isolation process during the COVID-19 outbreak" at KMCI during those same dates. Id. at ¶8. The plaintiff sues all defendants except Does 61 through 80 in their individual and official capacities. Id. at ¶¶3–8.

The facts section begins by listing what the plaintiff says are the March 2020 Centers for Disease Control and Prevention (CDC) guidelines regarding quarantining incarcerated persons believed to be close contacts of a known or suspected case of COVID-19. Id. at ¶¶9–15. The plaintiff says the Guidelines recommended quarantining known or suspected cases for fourteen days. Id. at ¶16. He alleges that on September 1 and 2, 2020, KMCI officials forced all incarcerated person to undergo testing for COVID-19. Id. at ¶17. This was a precaution after several persons assigned to Housing Unit 11 developed symptoms often associated with COVID-19. Id. at ¶18. He says that on September 3, 2020, six incarcerated persons assigned to Unit 11 tested positive for COVID-19 and were quarantined in the segregation unit of KMCI. Id. at ¶¶19–20. The roommates of those six persons, however, were not quarantined and remained free to use the restrooms, showers, recreation and school areas in Unit 11. Id. at ¶¶21–22.

The plaintiff alleges that on September 4, 2020, "other inmates" in Unit 11 began to complain of similar COVID-19 symptoms. Id. at ¶23. He says the defendants told those incarcerated persons "to remain in their cells with the exception of the use of the phones, showers and restroom." Id. at ¶24. The plaintiff alleges that Roger Edwards, who was incarcerated in Unit 11, was a roommate of one of the persons who tested positive for COVID-19. Id. at ¶25. On September 4, 2020, Edwards allegedly told KMCI medical staff that he was suffering from possible COVID-19 symptoms. Id. at ¶26. Staff told Edwards "to remain confined to his cell for six (6) days." Id. at ¶27. But Edwards still was permitted to use the showers and restrooms that other, non-quarantined persons could use. Id. at ¶28.

The plaintiff alleges that on September 7, 2020, Edwards wrote to KMCI asking to be tested for COVID-19. Id. at ¶29. Defendant Gliniecki responded and told Edwards, "[r]etesting is determined based on symptoms, screenings are reviewed as to who is retested." Id. at ¶30. Edwards complained about his symptoms again two days later and again requested retesting. Id. at ¶31. The plaintiff says medical staff did not retest Edwards, and Edwards was allowed to come off quarantine and rejoin the general population only six days after complaining about his symptoms. Id. at ¶32.

The plaintiff alleges that in September 2020, Unit 11 and Unit 9 (the unit where the plaintiff was housed) had a shared recreation area and recreation periods, during which persons incarcerated in both units could use the institution's exercise equipment. Id. at ¶33. The plaintiff says Edwards had

exercised with incarcerated person Shannon Dertz sometime in September 2020. Id. at ¶34. He says that on September 14, 2020, all persons incarcerated in Unit 11 were retested for COVID-19. Id. at ¶35. Two days later, medical staff informed thirty-eight Unit 11 persons (including Edwards) that they had tested positive for COVID-19. Id. at ¶¶36–37. On around September 19, 2020, Dertz told medical staff that he was suffering symptoms often associated with COVID-19. Id. at ¶38. The next day, Dertz and "several other" persons on Unit 9, who also had complained about suffering similar symptoms, were placed on cell confinement status. Id. at ¶39. The plaintiff says those incarcerated persons were still allowed to use the showers and restrooms of persons not on cell confinement status. Id. at ¶40.

The plaintiff alleges that KMCI eventually retested the entire prison population for COVID-19. Id. at ¶41. He says that around 800 incarcerated persons tested positive for COVID-19. Id. at ¶42. He says that on September 29, 2020, medical staff informed the plaintiff that he had tested positive. Id. at ¶43. He alleges that over the next ten days, he suffered from hot and cold flashes, loss of taste and smell, weigh loss and "a harsh cough." Id. at ¶45.

The plaintiff asserts that the defendants knowingly failed to quarantine the roommates of the Unit 11 persons who tested positive for COVID-19, which led to continued spread of the virus. Id. at 7. He asserts that the defendants' failure to test the roommates and quarantine any or all incarcerated persons who were suffering COVID-19 symptoms "caused some sufficiently serious conditions of confinement in KMCI's Unit-11." Id. at 8. The plaintiff says the

defendants "were fully cognizant" of the CDC guidelines but "intentionally disregarded the significant health concerns that occur as a result of not quarantining inmates, Edwards in particular, who had close contact with someone who had been confirmed to have tested positive for COVID-19." Id. at 8–9. He asserts that the defendants acted culpably by confining ill persons to their cells for only six days instead of the fourteen days that the CDC Guidelines recommended. Id. at 9.

The plaintiff accuses the defendants of knowingly utilizing "an ineffective custom that caused a COVID-19 outbreak." Id. at 9 (all caps omitted). He points to: staff decisions on September 3, 2020 not to quarantine the roommates of the six persons who tested positive for COVID-19; the decision not to test all persons for COVID-19 immediately; the decision to quarantine the positive Unit 11 persons for only six days (instead of the CDC recommended fourteen days); and the decision not to quarantine Unit 9 persons who complained of suffering from COVID-19 symptoms. Id. at 10. The plaintiff asserts that KMCI failed to follow CDC Guidelines in making these decisions, which he says shows the defendants' culpability in causing the outbreak of COVID-19 at the prison. Id. at 10–11. He accuses Gliniecki and Doe Defendants 41 through 60 of providing "an atrocious standard of care that was utterly indifferent towards the September 2020 circulation of COVID-19 amongst the inmate population at KMCI." Id. at 12.

The plaintiff seeks to proceed against the defendants under federal and state law. He seeks punitive and compensatory damages totaling $150,000,

7

"noneconomic damages in the maximum amount for medical negligence" and any additional relief the court deems appropriate. Id. at 13.

   C.   Analysis

The plaintiff's allegations challenge the conditions of his confinement. Under the Eighth Amendment, a state may not subject incarcerated persons "to conditions of confinement amounting to cruel and unusual punishment." Giles v. Godinez, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing Rhodes v. Chapman, 452 U.S. 337, 345–47 (1981)). The Supreme Court has clarified, however, that only "extreme deprivations" will amount to cruel and unusual conditions of confinement. Id. (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). The court must judge the alleged conditions "in accordance with contemporary standards of decency." Id. (citing Hudson, 503 U.S. at 8, and Rhodes, 452 U.S. at 346).

An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the context of a conditions-of-confinement claim, an incarcerated person must show that he has been deprived of "'the minimal civilized measure of life's necessities.'" Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes, 452 U.S. at 347). The subjective component requires the plaintiff to demonstrate that prison officials acted with the requisite intent, that is, that the officials acted with "deliberate indifference" to a substantial risk that the plaintiff would suffer serious harm. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

The court begins its analysis by noting that other courts in this district have screened similar or nearly identical complaints from persons who were incarcerated at KMCI in September 2020 and who alleged that the prison took inadequate steps to prevent them from contracting COVID-19. In Williams v. McDermott, *et al.*, the plaintiff sued Warden McDermott, various high-ranking officials at KMCI and the Wisconsin Department of Corrections (WDOC) and fifty John or Jane Does alleging that "they did not quarantine individuals with known or suspected cases of Covid-19 and that, as a result, he contracted Covid-19." Williams v. McDermott, Case No. 22-C-1003, 2022 WL 17961667, at *2 (E.D. Wis. Dec. 27, 2022). The Williams complaint provided more background and detail than the complaint in this case, but the allegations focus on the same September 2020 events that the plaintiff says led to hundreds of positive cases of COVID-19 at KMCI. Id. at *2–*3. In his order screening the complaint, Judge Adelman recounted that, "Courts have held that the risk of exposure to Covid-19 in prison satisfies the objective standard of an Eighth Amendment claim." Id. at *4 (citing cases). Judge Adelman then sifted through the allegations specific to each of the many named defendants, concluding that "the plaintiff does not state a claim based on his allegations that defendants refused to quarantine prisoners who had close contacts with individuals who had Covid-19 or were suspected to have it." Id. Judge Adelman found that, "while this may have occurred at KMCI, the plaintiff has not alleged defendants' actions caused him harm." Id. Judge Adelman concluded that

> while the plaintiff describes why he thinks prison officials' response
> to the Covid-19 pandemic at KMCI was inadequate and caused him

> to contract Covid-19, the plaintiff has not alleged that any defendant's action or inaction violated his constitutional rights. He seeks damages based on the KMCI's overall response to Covid-19, including their responses to other prisoners, yet he has not alleged that he contacted any prison official regarding his concerns. The plaintiff describes precautions that were taken at KMCI and alleges that staff there did not do enough, and that staff violated institution policy. Even if testing or quarantining was conducted negligently, negligence does not constitute deliberate indifference. *See Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020).

Id. Judge Adelman dismissed the complaint but allowed the plaintiff to file an amended complaint that provided more specific information about the defendants' actions or inaction related to his potential exposure to COVID-19. Id. at *5.

Judge Ludwig more recently issued a screening order for a complaint nearly identical to the complaint filed in Williams. See Martinez v. McDermott, *et al.*, Case No. 23-cv-1209, Dkt. No. 1 (Complaint), 10 (Screening Order). The complaint, like that in Williams, names Warden McDermott as the lead defendant and names numerous KMCI and WDOC officials and Jane or John Doe defendants. Id., Dkt. No. 1. Also like the complaint in Williams, the Martinez complaint provides extensive background information about the COVID-19 pandemic before alleging the same September 2020 events that led to the outbreak. Id. Judge Ludwig describes the complaint as alleging "Eighth Amendment claims against numerous Defendants because they failed to prevent [the plaintiff] from catching Covid-19 at the height of a worldwide pandemic." Martinez v. McDermott, No. 23-CV-1209-BHL, 2023 WL 6976742, at *2 (E.D. Wis. Oct. 23, 2023). Judge Ludwig's approach is similar to Judge Adelman's in Williams (which is understandable given the nearly identical

complaints), and he notes that the complaint acknowledges "that precautions were taken to minimize the spread of the virus, including partial lockdowns, institution-wide testing, encouraging suspected cases to isolate with limited exceptions, and quarantining confirmed cases." Id. Judge Ludwig rejected the plaintiff's claims against "staff members who allegedly failed to immediately quarantine an inmate who informed them he was not feeling well." Id. at *3. He noted that

> the unidentified staff members responded to the risk, including instructing the inmate to remain in his cell with limited exceptions. The mere fact that they did not respond in the way Martinez would have preferred does not support an inference that they turned a blind eye to the risk of infection. As another court observed during the time in question, "The plain fact is that the country is experiencing a pandemic and cases of COVID-19 are breaking out in prisons and communities across the country. This does not mean that the correctional officers in charge of those prisons are subjecting inmates to cruel and unusual punishment. People, both inside and outside prisons and jails, are cont[r]acting COVID-19 ...." *Coates v. Arndt*, No. 20-C-1344, 2020 WL 6801884, at *2 (E.D. Wisc. Nov. 18, 2020).

Id. Judge Ludwig agreed with Judge Adelman's analysis that the complaint provided insufficient information for the court to "reasonably infer that any Defendant's action or inaction violated his constitutional rights." Id. Judge Ludwig also gave the plaintiff an opportunity to file an amended complaint that better explained the harm that the plaintiff believed the defendants had caused. Id.

In a third case, a person incarcerated at KMCI filed a complaint nearly identical to the plaintiff's complaint in this case. See Thomas v. McDermott, *et al.*, Case No. 23-cv-734-jps, Dkt. No. 1 (Complaint), 9 (Screening Order). The

complaint in Thomas, like the complaint here, names McDermott and eighty John or Jane Doe defendants, separated into the same twenty Doe groups. Id. at 1, ¶¶3–7. The Thomas complaint does not include Gliniecki as a defendant, and it provides the plaintiff's personal account of events in early September 2020 rather than providing the perspective of other incarcerated persons, like the plaintiff here does by discussing Roger Edwards and Shannon Dertz. But the allegations are nearly identical to those alleged in the complaint in this case, including the description of the CDC guidelines, the precise wording of allegations in each paragraph and the general claims seeking relief under federal and state law (and against the defendants in their individual and official capacities) for the events of September 2020. Id. at 2–5.

Judge Stadtmueller issued an order screening the plaintiff's complaint, which he noted "establishe[d] that KMCI was taking steps to protect inmates from COVID-19: inmates identified as positive for COVID-19 were quarantined and those suffering COVID-19 symptoms were instructed to remain in their cells except for limited exceptions." Thomas v. McDermott, No. 23-CV-734-JPS, 2023 WL 6463046, at *4 (E.D. Wis. Oct. 4, 2023) (citing Coates, 2020 WL 6801884, at *2, and other cases). Judge Stadtmueller cites Williams, observing that, "while Plaintiff and these [quarantined] prisoners were all on Unit 11, Plaintiff does not allege that he came into contact with them or that he contacted any of the defendants regarding these prisoners and their COVID-19 status." Id. Judge Stadtmueller concluded that the complaint did not state a claim, but he gave the plaintiff an opportunity to file an amended complaint

that provided more detailed allegations specific to the defendants' actions that violated his rights and caused him harm. Id.

These recent cases are instructive. The complaint here, which, as noted, is nearly identical to the complaint in Thomas, makes general allegations about the policies KMCI had in place in September 2020 to curb the spread of COVID-19. The plaintiff alleges that officials tested incarcerated persons complaining of symptoms, quarantined persons who tested positive for COVID-19, instructed others with COVID-19 symptoms to remain in their cells except for limited exceptions and at least twice performed mass testing of all persons incarcerated at KMCI. These allegations show that KMCI officials had not "'turned the kind of blind eye and deaf ear to a known problem that would indicate total unconcern for the inmates' welfare.'" Thomas, 2023 WL 6463046, at *4 (quoting Money v. Pritzker, 453 F. Supp. 3d 1103, 1131–32 (N.D. Ill. 2020)). Their response may not have been perfect, but that "'does not mean it was unreasonable, and the standard is always reasonableness in light of the surrounding circumstances.'" Id. (quoting Giles v. Tobeck, 895 F.3d 510, 513 (7th Cir. 2018)).

Also like the complaint in Thomas, the plaintiff's complaint does not allege that he had contact with any Unit 11 or Unit 9 incarcerated persons who tested positive for COVID-19 or who were roomed in cells with person who did. Nor does he allege that he ever contacted any defendant about symptoms he was experiencing or concerns that he had. He alleges almost nothing about *his* experience or his situation at KMCI. He provides information about the

experience of *other* incarcerated persons (Edwards and Dertz) to discuss what he believes were inadequate quarantine policies. The only allegations specific to the plaintiff are the three paragraphs in which he alleges that he was one of over 800 persons who tested positive in late September 2020 and discusses his symptoms. Dkt. No. 1 at ¶¶43–45. The plaintiff's complaint provides the least information of all four cases discussed above about how the action or inaction of any defendant personally caused him to contract COVID-19.

The complaint does not state a claim against defendant Gliniecki. The complaint alleges that Gliniecki gave Edwards an incomplete response to his request to be retested for COVID-19. Dkt. No. 1 at ¶30. But it does not allege that Gliniecki had any interaction with the plaintiff. The complaint alleges generally that Gliniecki and twenty Doe defendants failed to institute adequate safeguards at the prison "to thwart the spread of coronavirus within an institution setting." Id. at 12. But for the reasons described above and in the similar cases the court discussed, these general allegations do not provide enough information to allow the court reasonably to infer that Gliniecki or the Does' action or inaction violated the plaintiff's constitutional rights. See Martinez, 2023 WL 6976742, at *3; Williams, 2022 WL 17961667, at *4.

The complaint makes no allegations about Warden McDermott. It merely lists McDermott as a defendant without explaining what she specifically did or failed to do that violated the plaintiff's constitutional rights. The complaint in Thomas, which again is nearly identical to the complaint in this case, similarly failed to allege that Warden McDermott "personally participated in the alleged

actions" and instead "allege[d] generally that KMCI was aware of CO[VID]-19 guidelines." Thomas, 2023 WL 6463046, at *4. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996)). The plaintiff cannot proceed against McDermott merely because she is the warden of KMCI. See Iqbal, 556 U.S. at 676–77; see also Horshaw v. Casper, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly.").

Although the plaintiff may use John or Jane Doe placeholders to identify persons whose names he does not know, he cannot use a Doe placeholder to identify a *group* of individuals or staff members named collectively as one defendant. See Cash v. Marion Cnty. Jail, 211 F. App'x 486, 488 (7th Cir. 2006) (affirming district court's dismissal of suit naming jail "staff" as defendants); Gray v. Weber, 244 F. App'x 753, 754 (8th Cir. 2007) (affirming dismissal of prisoner's §1983 complaint against defendants identified "only collectively as 'medical staff'"). As the court discussed above related to Warden McDermott, a complaint must allege how each defendant was *personally* involved in the alleged conduct and *specifically* violated the plaintiff's rights. It is not enough to say that twenty (or eighty) unidentified persons acted

identically and collectively violated the plaintiff's rights. See Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009) (affirming that "vague phrasing" in complaint that "'one or more of the Defendants' had engaged in certain acts or deprived [plaintiff] of his constitutional rights . . . does not adequately connect specific defendants to illegal acts").

The plaintiff's wide-ranging allegations describe why he believes prison officials took inadequate steps to reduce the spread of COVID-19 at KMCI in September 2020, but the complaint does not allege sufficient facts for the court to infer that the actions or inaction of any specific defendant violated the plaintiff's constitutional rights. The complaint suggests that some KMCI officials may not have followed ideal practices for quarantining incarcerated persons who contracted COVID-19; but that does not mean they acted *indifferently* to the risk to persons incarcerated at KMCI, particularly given the rapidly changing and uncertain nature of events and guidance in 2020. The plaintiff's allegations *may* suggest that some officials were negligent to the risk that he would contract COVID-19. But negligence does not violate the Constitution. See Farmer, 511 U.S. at 835–36. Though the plaintiff seeks to proceed on a state law claim of medical negligence, he may not proceed solely under state law under §1983. See Williams, 2022 WL 17961667, at *4 (citing Guajardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010); and Domka v. Portage Cnty., Wis., 523 F.3d 776, 784 (7th Cir. 2008)).

The court will dismiss the complaint because it fails to state a claim. Because the plaintiff may be able to state a claim if he provides additional

16
Case 2:23-cv-01017-PP   Filed 03/08/24   Page 16 of 20   Document 12

detail, the court will give him an opportunity to amend his complaint to correct the deficiencies noted and better explain the claims in his complaint. When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

      The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to-explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 5.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive* it by **April 5, 2024**. If the court receives an amended complaint by the end of the day on April 5, 2024, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the end of the day on April 5, 2024, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$341.71** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the

transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Kettle Moraine Correctional Institution.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 8th day of March, 2024.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**